# FOR PUBLICATION



**FILED & ENTERED**

DEC 21 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY cargill    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MARKUS BOYD<br><br>Debtors | Case No.: 6:18-bk-10628-MH<br><br>Chapter: 11<br><br>Adv. No.: 6:18-ap-01094-MH |
| MARKUS BOYD<br>Plaintiff<br><br>v.<br><br>FIRST FRANKLIN MORTG. LOAN TRUST, MORTGAGE LOAN-ASSET BACKED CERTIFICATES, SERIES 2007-FFC, U.S. BANK NAT'L ASS'N, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, N.A., AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NAT'L ASS'N, AS TRUSTEE, C/O SPECIALIZED LOAN SERVICING LLC; AND SPECIALIZED LOAN SERVICING LLC<br>Defendants | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING** |

## I. PROCEDURAL BACKGROUND

On January 26, 2018, Markus Boyd ("Debtor" or "Plaintiff") filed a Chapter 11 voluntary petition. On Schedule A, Debtor listed certain real property located at 5522 Deer Creek Ln., Rancho Cucamonga, CA 91737 (the "Property"), and valued the Property at $1,608,699.00. On Schedule C, Debtor claimed an exemption in the Property in the amount of $100,000. On Schedule D, Debtor listed three liens on the property: (1) a first mortgage, held by Mr. Cooper Home Loans, in the amount of $895,952.46; (2) a second mortgage, held by Specialized Loan Servicing, in the amount of $581,946.44; and (3) an HOA statutory lien, in the amount of $14,586.35, held by Deer Creek HOA. On March 23, 2018, First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FFC, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee (collectively, with Specialized Loan Servicing LLC, "Defendants") filed a proof of claim in the amount of $357,975.27 ("Claim 12"). Claim 12 is related to the second mortgage, and is identified as secured by the Property.

On April 21, 2018, Debtor filed a complaint against Defendants for: (1) declaratory relief; (2) to avoid the second deed of trust; and (3) to disallow Claim 12. On June 5, 2018, Debtor filed an amended complaint, listing three causes of action: (1) avoidance of a fraudulent transfer; (2) recovery of the transferred property; and (3) disallowance of Claim 12. On June 19, 2018, Defendants filed a motion to dismiss the amended complaint (the "Motion") for failure to state a claim. On July 6, 2018, Debtor filed an opposition. On July 25, 2018, the Court held a hearing on the Motion, and continued the matter for supplemental briefing. After supplemental briefing from both parties, the Court held a continued hearing on October 3, 2018, and granted the Motion. On October 22, 2018, the Court entered an order stating that the Motion was "granted based on the findings, facts, conclusions of law on the record and the pleadings filed in this case," and that Debtor had leave to amend until November 5, 2018, otherwise the case would be dismissed with prejudice. Two days later, the Court vacated the interlocutory order, stating that it would "issue a memorandum decision without further briefing or argument."

## II.    FACTUAL BACKGROUND

This adversary proceeding stems from a consent judgment entered into by, among others, Bank of America and certain attorneys general on April 4, 2012 (the "Consent Judgment"). Debtor is not a party to the Consent Judgment. At the time of the Consent Judgment, both of Debtor's mortgages were held by Bank of America. According to Debtor:

> The Consent Judgment provided that if B of A held two mortgages on the same residence, then if it modified the first mortgage by reducing the principal balance it was required to modify the second mortgage according to certain stated terms. (Consent Judgment at page 167, part h.) On February 22, 2013, B of A modified the first mortgage on the Property by reducing the principal balance. Therefore, it was required to modify the second mortgage.

[Dkt. No. 8, pg 4, lines 17-21].

Debtor's argument, while novel, can be succinctly summarized as follows. First, Bank of America's failure to extinguish the second mortgage, when it was allegedly obligation to by the Consent Judgment, constitutes a transfer of an interest in property. Second, Debtor did not receive any value in return for the transfer, and Debtor was insolvent at the time the transfer was made, rendering the transfer constructively fraudulent under applicable law. Third, the IRS has standing to avoid the transfer, the IRS is the holder of an unsecured claim, and thus Debtor is allowed to step into the shoes of the IRS and avoid the transfer pursuant to 11 U.S.C. § 544(b).

Defendants raise a variety of arguments to support dismissal of the amended complaint: (1) Debtor lacks standing; (2) this Court lacks jurisdiction to hear the action; and (3) the failure to extinguish the second mortgage is not a transfer as a matter of law.

### III. DISCUSSION

*I.    SUBJECT MATTER JURISDICTION AND STANDING*

In the Motion, Defendants argue that: (a) the Court lacks subject matter jurisdiction over this action; and (b) that Plaintiff lacks standing to bring this claim. It appears that Defendants have abandoned their argument that this Court lacks subject matter jurisdiction – Defendants' subsequent pleadings lack any reference to the argument. Nevertheless, for the reason stated in Plaintiff's opposition to the Motion, namely that each of the claims brought by Plaintiff is a core proceeding, the Court concludes that it does have subject matter jurisdiction.

Regarding standing, Defendants' argument is somewhat confusing. In its supplemental brief, Defendants argue that "determining whether the lien should have been released requires enforcement of the Consent Judgment, which the Trustee lacks standing to do." [Dkt. No. 20, pg. 9]. The Court disagrees with this assertion because the amended complaint does not necessarily require this Court to *enforce* the consent judgment. Instead, it would appear that the amended complaint simply requires an interpretation of the Consent Judgment. Defendants' argument that "the only way to determine whether BOA was required to release the lien per the Consent Judgment is by initiating an action to enforce the Consent Judgment," [Dk. No. 20, pg. 9] does not appear to be correct. As such, the Court assumes, for the purposes of this decision, that Plaintiff has standing to bring the instant action.

*II.    MOTION TO DISMISS STANDARD*

FED. R. CIV. P. Rule 12(b)(6), made applicable in adversary proceedings through FED. R. BANKR. P. Rule 7012, a bankruptcy court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." In reviewing a FED. R. CIV. P. Rule 12(b)(6) motion, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the

plaintiff. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The trial court need not, however, accept as true conclusory allegations in a complaint or legal characterizations cast in the form of factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Hartman v. Gilead Scis., Inc*. (*In re Gilead Scis. Sec. Litig*.), 536 F.3d 1049, 1055 (9th Cir. 2008).

To avoid dismissal under FED. R. CIV. P. Rule 12(b)(6), a plaintiff must aver in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). It is axiomatic that a claim cannot be plausible when it has no legal basis. A dismissal under FED. R. CIV. P. Rule 12(b)(6) may be based either on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys*., 534 F.3d 1116, 1121 (9th Cir.2008).

III.    CAN THE FAILURE TO EXTINGUISH THE SECOND MORTGAGE BE A TRANSFER AS A MATTER OF LAW?

A. *Definition of Transfer*

11 U.S.C. § 101(54) defines transfer as:

(A) the creation of a lien;
(B) the retention of title as a security interest;
(C) the foreclosure of a debtor's equity of redemption; or
(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –
   (i)    property; or
   (ii)   an interest in property.

The above statutory excerpt is taken from the definitions section of the Bankruptcy Code, 11 U.S.C. § 101, which begins by stating: "[i]n this title, the following definitions shall apply." Despite the use of the word "shall," a mandatory term, Defendants have maintained that Plaintiff is required to use the definition of transfer included in 28 U.S.C. § 3301. In support of its position, Defendants rely on the Supreme Court case of *Butner v. United States*, 440 U.S. 48 (1979), which, according to Defendants, stated that "[t]o determine whether a transfer has occurred, we look at state law." As noted by Plaintiff in his supplemental brief, *Butner* does not contain that quote. Furthermore, the plain language of the Bankruptcy Code directs this Court to apply the definitions contained in 11 U.S.C. § 101 when interpreting Title 11. *See also Barnhill v. Johnson*, 503 U.S. 393, 397 (1992) ("What constitutes a transfer and when it is complete is a matter of federal law."). Therefore, the Court concludes that 11 U.S.C. § 101(54) provides the applicable definition of transfer.

### B. Transfer in 11 U.S.C. § 101(54)(B)

Plaintiff primarily relies on 11 U.S.C. § 101(54)(B) in his argument that Bank of America's failure to extinguish the second mortgage constitutes a transfer. Specifically, Plaintiff argues that Bank of America failure to extinguish the second mortgage is equivalent to the retention of title as a security interest.

First, the Court notes that both parties have appeared to conflate "title" with "lien" throughout their briefing. BLACK'S LAW DICTIONARY (10th ed. 2014) defines "title" as:

> (1) [t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself; (2) [l]egal evidence of a person's ownership rights in the property; and instrument (such as a deed) that constitutes such evidence.

While "lien" is defined as: "[a] legal right or interest that a creditor has in another's property, lasting usually until a debt or duty that it secures is satisfied. Typically, the creditor does not take

possession of the property on which the lien has been obtained." *Id*. Based on the definitions recited above, the mortgages held by Defendants would constitute "liens" not "title."

In property law, there is a distinction between "lien theory" and "title theory" jurisdictions for mortgages and deeds of trust. The Court looks to state law to define respective property rights. *See, e.g.*, *Butner v. U.S.*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). In the early 20th century, California, in some circumstances, applied the "lien theory," and, in other circumstances, applied the "title theory." *See, e.g.*, *Hagge v. Drew*, 27 Cal. 2d 368 (Cal. 1945); *Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644 (Cal. 1933) ("The common-law courts held, however, that 'title' to the property was in the mortgagee, and this 'title' theory of mortgages still prevails in many states. Early in the history of this state, however, our courts and the Legislature, in an attempt to express the real essence of the transaction, adopted the so-called 'lien' theory of mortgages, under which the mortgagee does not get title, but simply obtains a lien.") (citation omitted); *Koch v. Briggs*, 14 Cal. 256 (Cal. 1859) (applying "lien theory" to mortgages and "title theory" to deeds of trust). At present, however, California law has unequivocally adopted the "lien theory." *See, e.g.*, *In re Cruz*, 457 B.R. 806, 817 (Bankr. S.D. Cal. 2011) ("Under *Monterey*, a deed of trust is no longer a conveyance of actual title to the Property, but merely a lien. The borrower now retains actual title to the property. That this title theory is discredited by the Supreme Court is recognized by the Ninth Circuit.").

Because California is a "lien theory" state, Defendants do not, and did not ever have, title to the Property. Because Defendants never had title to the Property, Defendants could not have retained title to the Property, and, therefore, 11 U.S.C. § 101(54)(B) is inapplicable to the instant situation. Nevertheless, because all of the briefing presented to the Court has treated "title" and "lien" as interchangeable, and in order to address any potential argument that § 101(54)(B) permits those terms to be used interchangeably, the Court will explain why address why a "retention of a lien" cannot be considered to be a transfer.

First, case law interpreting § 101(54)(B) is virtually non-existent. The only case identified by the parties, or the Court, which discusses the language of that provision in any detail is *In re Sequoia Partners, LLC*, 2012 WL 3133521 (Bankr. D. Ore. 2012). The extent of the analysis provided by the bankruptcy court is as follows:

> Bankruptcy Code § 101(54)(B) provides that the retention of *title* as a security interest constitutes a transfer. For example, if a sailboat is sold and the seller retains title to the boat until the boat is fully paid for. The retention of title serves the same purpose as a transfer of a lien against the property by the buyer. Both Oregon and federal bankruptcy law define "transfer" as every mode of parting with property or an interest in property. The specifics given in the definitions are merely examples of parting with property or an interest in property. I do not find that the retention of its *security interest* by RRM constitutes the parting by Sequoia of an interest in its property under either Oregon or federal bankruptcy law. For that reason, summary judgment will be grated to Defendant on Counts 3, 4, and 5.

*Id*. at *7 (footnote and citation omitted). While not identified by the parties here, the bankruptcy court in *Sequoia Partners* has clearly emphasized the distinction between "title" and "security interest," even providing a contrasting example of a situation which would appear to fit within the wording of 11 U.S.C. § 101(54)(B).

In response to *Sequoia Partners*, Plaintiff argues that the bankruptcy court in *Sequoia Partners* essentially reduced the definition of a transfer to that contained within § 101(54)(D). Plaintiff argues that this interpretation of § 101(54), a disjunctive statute, is incorrect. Clearly, Plaintiff is correct that when a statute provides four options, separated by the disjunctive "or," only one of such options need be satisfied.

The Court notes that there is a reasonable basis for Plaintiff's reading of the excerpt from *Sequoia Partners*. Specifically, the sentence stating that: "[t]he specifics given in the definitions are merely examples of parting with property or an interest in property," combined with the fact that the bankruptcy court footnoted that sentence with a citation to § 101(54)(D), does provide an opportunity for the argument that the bankruptcy court reduced § 101(54) to § 101(54)(D).

Nevertheless, in light of the example cited by the bankruptcy court, a seller retaining title to a sailboat until the boat is fully paid for, the Court finds Plaintiff's reading to be incorrect. While the bankruptcy court in *Sequoia Partners* analogized the retention of title to the creation of a lien, ostensibly in order to fit § 101(54)(B) into the general definition of a transfer as "parting with property or an interest in property," such analogy is unnecessary in light of the fact the Bankruptcy Code explicitly creates two separate categories for those two actions, each of which is separate from § 101(54)(D). And the retention of a lien is materially different from both § 101(54)(A) ("the creation of a lien") and § 101(54)(B) ("the retention of title") as demonstrated by the brief example in *Sequoia Partners*.

Second, Plaintiff's conflation of "lien" and "title" in 11 U.S.C § 101(54)(B) would appear to conflict with caselaw binding on this Court. *In re Wind Power Sys., Inc.*, 841 F.2d 288, 292 (9th Cir. 1988), stated that: "the renewal of a lien or security interest is not a new transfer within the meaning of section 547 if it merely continues an existing interest; it does not diminish the collection of assets to be distributed among the general creditors." Because the Ninth Circuit has concluded that the renewal of a lien is not a transfer because it merely continues an existing interest, Plaintiff's argument that retention of a lien can be a transfer would appear to contravene binding law.

Third, and, arguably, most importantly, Plaintiff's interpretation of the definition of transfer, if accepted, would have monumental implications far outside the instant case. If the Court were to substitute "lien" for "title" in § 101(54)(B), it would not be clear why every single secured creditor of a debtor in bankruptcy would not have been considered to have retained lien as a security interest, and thus committed a potentially avoidable transfer. This inevitably results because the term "retention" would seem to operate essentially as an antonym of "transfer"; at any given point, a holder of an interest is either transferring that interest or retaining it. Therefore, if the Court permitted Plaintiff to substitute "lien" for "title" then every single lienholder might be subject to an avoidable preference action. While Plaintiff points to an event which he asserts imposed a requirement on Bank of America to release the lien, the occurring of such an event would not seem to be required by the plain language of the statute. Quite simply,

Plaintiff appears to have started from a wholly unsupported legally position, then tempered the position by resorting to the facts of the instant case, to make the position appear less absurd.[1] Yet, this limiting of § 101(54)(B) is not supported by the plain language of the statute. Because the Court has an obligation to read a statute in a manner which does not produce an absurd result, the Court cannot see any basis to permit "lien" to be substituted for "title" in § 101(54)(B).

C. Transfer in § 101(54)(D)

Plaintiff has not presented a clear argument as to how the failure to extinguish the second mortgage could be considered a transfer pursuant to 11 U.S.C. § 101(54)(D). In his supplemental brief, Plaintiff concedes that "if § 101(54) consisted solely in § 101(54)(D), the Defendants' position might possibly be vindicated," though he continued on to state that "Mr. Boyd does not concede this possibility." [Dkt. No. 21, pg. 2]. The Court will construe Plaintiff's supplemental brief as arguing that because Defendants allegedly had a duty to extinguish the second mortgage, the failure to do so was a constructive transfer.

In support of Plaintiff's position, Plaintiff refers to *In re Foreman Enters., Inc.*, 273 B.R. 408 (Bankr. W.D. Pa. 2002), a case not binding on this Court. Nevertheless, *In re Foreman Enters.* does not support Plaintiff's position here. While it is true that the bankruptcy court in *In re Foreman Enters.* stated that "[n]owhere is there any indication in the Bankruptcy Code that action, as opposed to inaction, by a debtor is required for there to be a transfer," that case also stated that "[d]efendants ultimately may turn out to be correct in asserting that there was no post-petition transfer in this regard but have not been persuasive to date in establishing whether there is such a change.". *Id*. at 416. Furthermore, that bankruptcy court revisited the issue approximately six months later, concluding that no transfer occurred. *In re Forman Enters., Inc.*, 281 B.R. 600 (Bankr. W.D. Pa. 2002); *see also* 2 COLLIER'S ON BANKRUPTCY ¶101.54[4][a] (16th ed. 2011) ("The pass-through of net operating losses or other tax consequences from a

---

[1] This approach is apparent in docket number 21, page 3, where Plaintiff distinguishes *Sequoia Partners* by stating: the fundamental difference between the two cases if that B of A was required by court order to reconvey, whereas the *Sequoia Partners* lienholder was not." While such a distinction, if correct, would be of practical or equitable importance, it is impossible to ground that distinction in the plain language of the statute.

Subchapter S corporation to its principals is not a transfer. The pass-through occurs by operation of law, not by any act on the part of the corporation or its principals.").

Finally, the Court notes that the "[t]he hallmark of a 'transfer' is a change in the rights of the transferor with respect to the property after the transaction." *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 338 (B.A.P. 9th Cir. 2009). Here, Plaintiff simply cannot point to any relevant change in the respective rights or interests in the Property. Plaintiff's argument that a transfer occurred, based on the idea that a transfer includes the failure to make an allegedly required transfer, if accepted, would open a bankruptcy trustee's avoiding power to almost unlimited ends.

For all of the reasons stated in this opinion, the Court finds that Plaintiff has failed to allege a transfer as a matter of law, and therefore the amended complaint's first claim is DISMISSED. Because the amended complaint's second and third claims are contingent on the first claim, those claims are also dismissed.

IT IS SO ORDERED.

###

Date: December 21, 2018

Mark Houle
United States Bankruptcy Judge